# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Cummings*, 2013 IL App (3d) 120128

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DERRICK A. CUMMINGS, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-12-0128 |
| Filed | February 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although the stop of the van defendant was driving was justified by the officer's knowledge that the registered owner, a person the officer knew to be a female, had an outstanding warrant, the purpose for the stop was satisfied when the officer approached the van and discovered the driver was a male, and based on the trial court's finding that the officer unreasonably prolonged the stop when he requested the driver's license and proof of insurance, defendant's motion to suppress evidence was properly granted. |
| Decision Under Review | Appeal from the Circuit Court of Whiteside County, No. 11-CF-60; the Hon. John L. Hauptman, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Gary L. Spencer, State's Attorney, of Morrison (Terry A. Mertel and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Sean Conley, of State Appellate Defender's Office, of Ottawa, for appellee.

Panel

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Presiding Justice Wright dissented, with opinion.

**OPINION**

¶ 1      Defendant, Derrick A. Cummings, was charged with driving while license suspended (625 ILCS 5/6-303(d) (West 2010)). The trial court granted defendant's motion to suppress evidence. The State appealed, arguing that the trial court erred in finding that the police officer unreasonably prolonged the stop of defendant's vehicle by asking defendant for his driver's license and proof of insurance after the reasonable suspicion for the stop had been satisfied and was no longer present. We affirm.

¶ 2                                  FACTS

¶ 3      On July 15, 2011, a hearing took place on defendant's motion to suppress evidence. Defendant testified that on the evening of January 27, 2011, he was driving a van owned by Pearlene Chattic. A police car pulled beside the van at a stop sign and, subsequently, continued to travel behind the van for three minutes. Defendant pulled over after the police car's emergency lights were activated. Defendant was not aware of any reason for the traffic stop. Defendant had not committed any traffic violations, and the lights and equipment on the van were functioning properly. Officer Shane Bland approached the van and asked defendant for his driver's license. Defendant was issued citations for driving while license suspended and operating an uninsured motor vehicle.

¶ 4      Bland testified that he was on patrol on January 27, 2011, when he observed a van that appeared to have an expired registration. Bland used the squad car's computer to check the status of the van's registration. The check revealed that the registration was valid and the van was registered to Chattic, who was the subject of a warrant for her arrest. Bland testified that he was aware that Chattic was a female. He also testified that he pulled along the side of the van at a stop sign in an attempt to identify the driver as Chattic, but his view was obstructed, and he could not tell whether the driver was a male or female. Bland was unable to observe

the driver's face because the "driver pinned [himself] back in the seat obstructing [Bland's] view." Bland testified that because the driver pushed back, "[i]t raise[d] [Bland's] suspicion that [the driver] was indeed the registered owner" but did not give him any other suspicions.

¶ 5    Bland pulled behind the van and activated the squad car's emergency lights. Both vehicles came to a stop. Bland exited the squad car and approached the van. As he approached the van, Bland was able to determine that the driver was not Chattic because the driver was male. Bland asked the driver for his license. Defendant indicated that he did not have a driver's license.

¶ 6    The trial court found that Bland had a legitimate reason to make the traffic stop but because the purpose of the stop–looking for Chattic–had been completed before Bland requested defendant's documentation, defendant had been unlawfully seized. The trial court granted defendant's motion to suppress evidence. The State filed a motion to reconsider, which was denied. The State appealed.


¶ 7                                        ANALYSIS

¶ 8    On appeal, the State contends that the trial court erred in granting defendant's motion to suppress. Specifically, the State argues that Bland's request for defendant's driver's license and proof of insurance did not unreasonably prolong the traffic stop.

¶ 9    We review the circuit court's ruling on a motion to suppress evidence under a two-part test. *People v. Harris*, 228 Ill. 2d 222 (2008). The trial court's factual findings are entitled to deference and will be reversed only if manifestly erroneous. *Id.* The ultimate ruling on whether to grant the motion to suppress is a question of law reviewed *de novo*. *Id.*

¶ 10   Both the federal and state constitutions protect citizens from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Thus, the fourth amendment attaches where a search or seizure takes place. *People v. Bartelt*, 241 Ill. 2d 217 (2011). Stopping an automobile and detaining its occupants constitutes a seizure. *Brendlin v. California*, 551 U.S. 249 (2007); *Harris*, 228 Ill. 2d 222. A seizure that is lawful at its inception can become unlawful as violating the fourth amendment if it either: (1) unreasonably prolongs the duration of the detention; or (2) independently triggers the fourth amendment. *Illinois v. Caballes*, 543 U.S. 405 (2005); *Harris*, 228 Ill. 2d 222. An investigative stop that is originally lawful must cease once reasonable suspicion dissipates and the detention becomes unlawful (*People v. Hernandez*, 2012 IL App (2d) 110266), unless there is a separate fourth amendment justification to prolong the stop (*People v. Baldwin*, 388 Ill. App. 3d 1028 (2009)).

¶ 11   In this case, the parties do not dispute that the purpose of the traffic stop–to determine whether Chattic was the driver of the van–was initially lawful. See *Hernandez*, 2012 IL App (2d) 110266 (providing that a reasonable suspicion exists to stop a vehicle where the registered owner's license is suspended). The parties dispute whether it was an unreasonable prolongation of the traffic stop to request defendant's driver's license after the reasonable suspicion for the stop dissipated.

¶ 12   Although it may be common protocol for police to request a person's driver's license anytime a motorist has been lawfully stopped, that request must be analyzed through the lens

of constitutional reasonableness, mindful that a lawful seizure can become unlawful if it is prolonged beyond the time needed to complete the stop. See *Caballes*, 543 U.S. 405; *Harris*, 228 Ill. 2d 222. Except where there is articulable and reasonable suspicion that a motorist is unlicensed or the vehicle is unregistered, or that either the motorist or vehicle is in violation of the law, stopping and detaining a motorist in order to check his credentials is unreasonable under the fourth amendment. *Delaware v. Prouse*, 440 U.S. 648 (1979).

¶ 13    Here, as soon as Bland determined that Chattic was not the driver of the van, the purpose of the investigatory stop was resolved, and any reasonable suspicion of criminal activity dissipated. At that point, the period of lawful seizure terminated, and the investigative stop should have ceased because there was not a fourth amendment justification for the stop.

¶ 14    In support of its contention that Bland's request for defendant's driver's license and proof of insurance did not unreasonably prolong the traffic stop, the State cites *People v. Bradley*, 292 Ill. App. 3d 208 (1997). In *Bradley*, the court held that when a police officer has lawfully stopped a motorist, even if the reason for the stop has ended, the officer may request the motorist's driver's license, proof of insurance, and registration without raising any constitutional issues. But *Bradley* was incorrectly decided. *Bradley* relied on *People v. Adams*, 225 Ill. App. 3d 815 (1992), for its rationale; however, *Adams* is distinguishable from *Bradley* in a critical way.

¶ 15    In *Adams*, the officer initiated a traffic stop because defendant did not have license plates. After making the stop, the officer noticed a valid license-applied-for slip in the window. The officer approached defendant's car to explain the reason for the stop. Then, based on defendant's slurred speech and an odor of alcohol, the officer formed an independent reasonable suspicion that defendant was driving under the influence (DUI). *Adams*, 225 Ill. App. 3d 815. The court held that it was reasonable for the officer to approach defendant and explain the reason for the mistaken stop and, in doing so, the officer formed new reasonable suspicion of DUI, justifying his request for defendant's driver's license. *Bradley* ignored *Adams*' reasoning.

¶ 16    Here, there was no reasonable suspicion to request defendant's driver's license. Bland specifically testified that defendant's behavior did not give him any suspicions, other than the possibility that the driver was the owner of the vehicle who had a warrant out for her arrest. Once Bland knew defendant was not the vehicle's owner, there were no specific and articulable facts that defendant committed or was about to commit a crime.

¶ 17    It should be noted that after Bland determined that Chattic was not the driver of the vehicle, he did not have to abruptly turn away and leave defendant wondering why he had been pulled over. It would have been reasonable for Bland to "approach the defendant, explain the reason for the stop, apologize, and advise defendant he was free to leave." *Adams*, 225 Ill. App. 3d at 819. At that point, Bland could have requested the driver's license in the context of a consensual encounter. See *People v. Cosby*, 231 Ill. 2d 262 (2008).

¶ 18    However, Bland requested defendant's license and proof of insurance after the reasonable suspicion for the stop had dissipated, without first ending the seizure. By asking for defendant's license with no reasonable suspicion for the continued detention, Bland unreasonably prolonged the duration of the stop. Therefore, the trial court did not err in

granting defendant's motion to suppress evidence.

¶ 19                                    CONCLUSION
¶ 20        The judgment of the circuit court of Whiteside County is affirmed.

¶ 21        Affirmed.

¶ 22        PRESIDING JUSTICE WRIGHT, dissenting.

¶ 23        I respectfully dissent because I do not believe defendant's traffic stop was unduly prolonged. In this case, the officer made an attempt to observe whether the driver of the van was female prior to initiating a traffic stop. However, when the officer pulled his vehicle next to the van, the driver leaned back in the driver's seat, successfully blocking the officer's view of the driver's face. Unable to see the driver's face, the officer quickly stopped the vehicle to investigate whether the driver could be the registered female owner of the van.

¶ 24        After a valid initial stop, an officer may approach a driver to explain the basis for the traffic stop and request a license, even though reasonable suspicion has dissipated. *People v. Hernandez*, 2012 IL App (2d) 110266, ¶ 5 (citing *People v. Bradley*, 292 Ill. App. 3d 208, 211 (1997)). The officer was justified in detaining defendant very briefly to insure the driver had a valid license and could lawfully drive away. See *People v. Safunwa*, 299 Ill. App. 3d 707, 714 (1998) (despite the fact that defendant's appearance did not resemble that of another man who had an outstanding warrant for his arrest, there was a sufficient justification to detain defendant briefly to confirm the validity of his license and confirm his identify without running afoul of the fourth amendment).

¶ 25        This case involves unique facts in that the actions of the driver of the van prevented the officer from making a quick visual determination regarding whether the driver was male or female. Based on the driver's curious conduct, the officer properly stopped the vehicle to determine whether the owner, who was wanted on an outstanding warrant, was the driver and could be apprehended by the officer. The officer did not unduly prolong the lawful traffic stop by quickly asking defendant to identify himself. See *Safunwa*, 299 Ill. App. 3d at 714 ("[r]equesting a license and conducting a status check after a lawful contact is but a momentary occurrence and the intrusion is minimal at worst").

¶ 26        Based on these circumstances, I respectfully dissent.